United States 18-1558 Wealthy vs. United States. Mr. McGee. Good morning, your honors. My name is Richard McGee. I'm a lawyer in St. Louis, Missouri and I'm appearing for the appellants. So may I please the court. So I've read the complaint, I've read the briefs, I've read the contract, and I'm, let's say, a little skeptical about the notion that if the contract required the erection of this levy that the government could escape potential takings liability, so just in that framework. But I read the contract. I don't see that the contract says anything about constructing or maintaining a levy. It just talks about the strip. Could you help me with that? Yes, your honor. You're correct. The contract does not refer to the levy. It does not refer to the levy. I believe that the party's understanding is that the levy and the filter strip are inextricably entwined. And I say that because from the very start of this case, and I was not the trial lawyer, but from the very start of the case, a reference was made to an affidavit filed by Mr. Gibbons in the trial court in a separate action that is still pending despite the assertions of the government. And in that affidavit, he stated that because the relief sought in that case was removal of the levy. In that case, he stated that if he was required to be in breach of his contract, the conservation contracts. Is that affidavit in the appendix here? I believe so, and it's referred to by the trial court. Where is it in the appendix? It's not in my appendix, but the significant portions are referred to. The references in the record of my appendix? The affidavit's in the government's appendix. What page? Well, the references to the affidavit in my appendix are... No, no, but what page of the government's appendix is the affidavit? It should stand up when addressed the court. Page 28, I'm informed by government's...kindly informed by government's counsel. Okay, so his view is that that would breach his agreement with the government, right? That's correct. And we have no ruling on that? In the case where the affidavit was submitted? Yeah, what happened was, and I'm sure it was a timing issue, the state court case in which that was filed was the ruling on the motion to dismiss by the trial judge was determined to be deficient under the Missouri Rules procedure. It was sent back to the trial judge on mandamus. The trial judge entered the judgment, and then we took an appeal. And I have a co-counsel on that case, and that appeal is pending right now. So, all the talk about most prosecution and everything, that's all on hold until this appeal is resolved. Okay, but what was the...there was a trial court ruling in that case? What was the trial court ruling? The trial court dismissed the cause of act, the claim. On what ground? He didn't state. He just...frequently in state court, the trial judges do not state the reasoning. And so then it's presumed to be the reasoning set forth in the motion. But the motion, and again, I was not counsel at that time, raises a lot of things, many of which are not set forth in the pleadings. And your honors, that's something I find peculiar in that case, and it's an issue on appeal. And also in this case, there's a tremendous amount of stuff, allegations in this, that are not in the pleadings. For example, there's a long history of Mr. Gibbons' complaints to the government about violations of various environmental laws for things that impact his property. My client has a very beautiful wetlands area that he's very protective of. And he's tried to handle things on his own for some time, and as you know, when clients try to represent themselves in matters of this complexity, they frequently do not get results. However, my point is this, that Mr. Gibbons has filed an affidavit to that effect. I, maintaining a filter strip, he's just required to maintain the filter strip. I do not believe there's any particular description of what maintenance of a filter strip constitutes in the contract. And Mr. Gibbons, who's party to that agreement, has asserted in a sworn statement that maintenance of that filter strip involves maintaining his levy. And I can represent to the court that the levy system is extensive. And just perhaps to give you my view and my understanding, is that the Whitewater River runs right along this property. And at flood times, it will actually rise to a level in which the waters of the Whitewater River will be, there will be so much water in there that then it will start to back up. And when it backs up, Mr. Gibbons' property is protected by the levy system. But then once his levy system stops at the border of his property, the water then comes around and floods out my client's property. More so than if the levy didn't exist. Yes, Your Honor. Yes, Your Honor. How long is the levy on Mr. Gibbons' property? Roughly. He has about a, I would say, I've seen it. Okay. Well, how far? I mean, I would estimate it's a mile, probably. A mile long? You can tell. He has a beautiful farm. I mean, it is really a great example of modern farming. And he knows what he's doing. But he's protecting his crop from flooding, which is probably the worst thing that can happen to a farmer. But he's doing it at the expense of my client. And I believe that the government, by making the requirement of maintenance of the filter strip, and Mr. Gibbons' belief, and I would imagine that he didn't come to that conclusion himself, that maintenance of the levy system is part and parcel of maintaining the filter strip, and therefore the basis of him receiving the compensation he's receiving. And I've never said that just because there's consideration for this, you know, that that means coercion. I'm saying that the government has come in and lured him with the money that he gets for not really doing a whole lot into maintaining the filter strip, and therefore contends that he cannot remove the levy. He cannot do anything to alleviate this problem. The levy was not constructed as a result of, in the first place, as a result of the government contract. It was there prior to the government contract? It may have been repaired at various times, but I'm not saying there's a linkage, you know, that the government said, oh, you've got to build a levy system. And so Mr. Welty's position is that levy should be taken down. Or doing something to mediate. Something that would mediate the flow. To deviate. And the government's liability is predicated on Mr. Givens not removing a levy that was already there. Or not otherwise mitigating the conditions established by the levy. Coercing him into, you know, not solving this problem for Mr. But they're not coercing him into building a levy that wasn't there. They did not. No, I don't contend that. I don't believe that, and I don't contend that. Okay, you want to save the rest of your time here for. Is Peppin. May please the court. My name is Joan Peppin on behalf of the United States. So I've got a problem with your argument that you made to the court of federal claims and the holding. It doesn't seem to me that if the government contracts with somebody to do something. That there has to be proof that the person who entered into the contract was coerced. In other words, what's the basis for saying that Givens has to be coerced? If the government says to Givens, we'll contract with you and, you know, ask you to destroy somebody's property. I mean, surely that could be a taking, right? You wouldn't have to show that the person was coerced into entering into the contract. That Givens was coerced into entering into the contract. That just seems wrong, right? Well, it depends on the circumstances. In the ordinary case where the government decides it wants to build a levy and it might hire a contractor to put up that levy. No, but you're not really addressing my question. My question is if the government contracts with somebody to do something. That would be a taking if done by the government. You don't have to show that the person who entered into the contract was coerced into entering into the contract in the first place, right? Well, the alternative would be to show agency. No, no, but try to answer my question. I am. Coercion or agency is the standard. Well, doesn't that effectively create an agency relationship? If the government says to Givens, I know this is hypothetical. That's not this case. We're going to contract with you to do something which is harmful to the plaintiff's property here. That would be potentially a taking, right? And it wouldn't have to be that the government coerced Givens into entering into the contract. Well, in order for the government to be liable for a taking, there ordinarily has to be a government action that takes private property. Well, they can enlist somebody else to do it. Right. So in order for the action of a third party to count as a government action, the precedents of this court say that there has to be either coercion or agency. Now, in the typical case you described. Why isn't contracting with somebody to do something the equivalent of making that person the government's agent? Some contracts create an agency relationship and some do not. This one does not. We didn't really brief agency because it wasn't raised. Well, I don't think the reference to agency in cases like A&D is to formal agency relationship. I mean, I think it's effectively you have an agency relationship if the government contracts with somebody to do something. No? Again, since agency was not briefed in this case on either side, I really can't address that nuance of the question of whether in A&D when the courts say agency. What you're quoting by the Court of Federal Claims, which on its face seems wrong, and that is that the government can only be liable for what Gibbons did if Gibbons was coerced into entering into the contract with the government. That just seems wrong. If the government had contracted with Gibbons directly for a levy, this would be a very different case because then the action that Gibbons took that the plaintiffs allege harms them, the construction and continued existence of the levy, would be the direct and intended result of the government's action in contracting. And that is one of the two findings that must be made in order for the government to be liable for a taking based on the actions of a third party. The action that harms the plaintiffs must be the direct and intended result of the government action. And then in order for that third party action to count as a government action, this court has held that there must be coercion or agency. Now, I do understand the hypothetical and the concern. You know, in a typical case where the government wanted a levy built, it would contract with somebody to build a levy, and then there might very well, there would certainly be the direct and intended result, and you may very well have an agency relationship. That's very hypothetical in this case. Even their theory, which will take it to... Okay, so it sounds to me as though you're not really defending what the Court of Federal Claims said, that what you're saying is that this contract didn't require Gibbons to maintain the levy. I do think the Court of Federal Claims was correct and was following this court's precedence in... Okay, let's assume that it was wrong. Okay. Just hypothetically. All right. Where are we then? I mean, the contract here doesn't refer to the levy, but we have this affidavit, which apparently was considered in connection with the motion to dismiss, in which Gibbons says the contract required me to maintain the levy, right? He said he would breach it if he took it down. Yeah. Well, even if you accept that theory is true, which is appropriate at this stage in the proceedings, it still would at most make the harm to his neighbor, Mr. Welty, a consequential, a collateral, an indirect result of the government action with respect to Mr. Gibbons. The government action with respect to Mr. Gibbons, it's very clear, was to establish a filter strip. A filter strip is not the same thing as a levy. We would not agree that they are integrated or necessary to each other. That is Mr. Gibbons' assertion, which was to his benefit in a state court action. But, again, taking that fact as true at this stage of the proceedings, it would still be at most an incidental collateral consequence and not the direct and intended result of the government's contract with Mr. Gibbons, which was for the purpose of filtering agricultural runoff before it hits the Whitewater River. That's what a filter strip does. It's defined by regulation. Sorry, this is the appendix. It's defined by regulation at page four, I believe, in our brief. A filter strip is a strip or area of vegetation adjacent to a body of water, the purpose of which is to remove nutrients, sediment, organic matter, pesticides, and other pollutants from surface runoff and subsurface flow. If by coincidence on Mr. Gibbons' farm, he couldn't bulldoze his levy without mucking up his filter strip, and he therefore chooses to keep his levy up. I'm sure he has other reasons he likes his levy. I don't think that's the theory. I think the theory is that the floodwaters would wipe out the filter strip if it weren't for the levy. Well, whatever the theory is, it would still be the case that it's a collateral consequence, an unintended consequence, and that is not sufficient to make a third-party action responsible. Sorry, to make a third-party action a government action such that it could be the predicate for a taking. This is really fundamentally a dispute between two neighbors. The levy, as we've all agreed, was up before these contracts were entered into. It was put up by Mr. Gibbons on his private property for his private purposes, and this dispute has been going on between them since the late 90s. Remind me, is the filter strip on the farm side of the levy or is it adjacent to the river? We don't have information on that. It must be adjacent to the river, right, because the purpose is to keep the farm runoff from going into the river, so it has to be between the farm and the river, right? That makes sense, but I don't know that to be the case. If you don't put it there, what purpose is it serving? I agree that that makes sense, but I don't want to represent to this court that it is there because I don't know that fact. So, well, the conservation, do you want me to address coercion because that is what the court decided, or do you want to discuss the indirect consequences? Well, I'm having difficulty seeing how coercion of Gibbons is a necessary element of the cause of action here, and we've been through that. Well, because the building of the levy was not part of this contract, because the continued existence of this levy is not in any way called for under this contract directly, it is at most indirect. So suppose the government had said directly to the plaintiff here, and suppose the government had owned the Gibbons farm, and the government had maintained the levy and it caused flooding of the plaintiff's property. Would that potentially create takings liability? Certainly it could. If the government owned the levy causing flooding, it could certainly be allowed for a taking, if the facts establish that a taking had occurred. All right. Okay. Yes. Mr. McGee? Just briefly, I would like to read from the... Before you, just because we have a factual question floating here. Is it correct? Well, Judge Mayer's question was where the strip is. It runs right along the river. I was guessing, but... You're absolutely right. Between the farm and the river. Yeah. And the levy is on the river side of the strip. Yes, sir. Yeah. Yes, Your Honor. Yeah, I've actually, I've been to the premises, not that I'm aware. But... The levy is on the, the strip is along the water. Is that what you're just saying? No, no, the levy... The levy's along the water. Yeah, the levy's along the water. Before, okay. On a regular day, you then go on the other side of the levy and you look down. Okay, now I got it. You know, it's like, I'm not going down there. That's where the Whitewater River is. But it evidently, you know, we would expect the evidence to show that it actually fills up and then starts to back. And the levy is very effective in keeping Mr. Gibbons' farm from flooding. And he has a very excellent farm. I mean, you know, I can see why he would do it, you know. But in his affidavit, he, the first thing he cites that would be a problem of, if he were required to remove any part of the levy to, as a relief in my client's case, is that he would lose the payments from the government. But it sounds like you're saying that he probably wouldn't remove the levy anyway because it protects his farm. Well, that's correct. I totally agree with that. Okay. And that's the basis of the state court action, is that he's, you know, he's done something that is not a reasonable use of his property. I mean, it's very simple. Missouri follows the rule of reasonableness as to water runoff. Right. But whether or not it's a violation of the state nuisance law or whatever, it is in his interest whether or not the federal government had a contract with him regarding conservation to keep that levy there. Well, what he's saying, Your Honor, and this would have to be, you know, if the case could move forward, is what he's saying is that he can't remove it. Okay. You know, whether he would want to or not, that's a separate issue. He probably can. He just loses his payments from the government, right? Well, he's saying there would be penalties. Well, okay. And all sorts of things that prevent it. There would be monetary consequences, but there would also be monetary consequences if he took the levy down and the only thing that happened was his farm got flooded and it was wiped out for a year. Right? Yes. Okay. But my problem is, is that he's putting up these contracts as a barrier to achieving a solution to this, you know, this what would they call a flow easement onto my client's property. The problem that you're identifying is that maybe he'd like to have the levy to protect his farm, but maybe as a matter of state law, if that were the only purpose of the levy, he'd have to take it down. And the reason he's resisting that state law claim to force him to remove the levy is that it's required by his contract with the federal government. Is that fair? I totally agree with that. I mean, that's what they're saying, you know. You know, in conclusion, you know, my position has throughout this matter been that, you know, the owner of a farm property does have the right to protect his property from flooding. But he can't do so in a way that substantially harms a neighbor's property. And the government is facilitating this unfair situation by, you know, the existence of these contracts, extracting these contracts from Mr. Gibbons, you know. I'd be very interested to find out who approached who, you know. Did the government think that this would be great for the waters of the United States to require this filter strip, knowing that the levy was in place and that, you know, everybody knew the deal was keep the levy, keep the filter strip, we protect the Whitewater River. When is this decision expected from the state appellate court on the action to force the removal of the levy? The action before the state court is whether to remand the case for further proceedings. In other words, the circuit court judge entered by mandamus a judgment dismissing our petition. Petition to force him to remove the levy. But yeah, a petition based on reasonable use or unreasonable use of this property. And yeah, requesting that type of relief. Couldn't the Welty's build a levy? Oh, the Welty's? I don't think they have the wherewithal to do it. I don't know. I mean, I guess, you know, I mean, I don't think there's anything in particular that would be prohibiting from it. I think that their position would be that why should we be forced to build a levy that we, you know, just because Mr. Givens has decided to protect his property in a way that harms our property. You know, I never really talked about that with my clients, but that's a good point. You know, so I'm closing your honor. I think there are more questions than answers here. I was not involved previously, but I think that to remand it ground sleeve to your honor says coercion may not be relevant. What role did the government have in creating this situation? And if they had a role, what is their liability? We're asking that it be remanded for further proceedings. Do you know when the levy was built? It's been built over a series of years. It was somewhat of a modest levy. I think I saw in one of the petitions or the brief a history of it. I mean, it's some time ago. Yeah. Forty years? Twenty. Twenty years. Okay. And the government's involvement with the conservation contract goes back how far? My understanding of the last one that there are three, I've become more knowledgeable about what the contract was 2000. Okay. Thank you, Mr. We thank both counsel cases.